## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christina Beauregard, Jane Braaten, Jessica Cray, Melanie Hoover, Jennifer Thornwall, Jason Zweifel, Melanie White, and Ann Tescher,<br><br>*Plaintiffs*,<br><br>*vs*<br><br>The Mayo Clinic, a Minnesota non-profit corporation, Mayo Foundation for Medical Education & Research, a Minnesota non-profit corporation, and Mayo Clinic Health System-Southeast Minnesota Region, a Minnesota non-profit corporation,<br><br>*Defendants*. | Court File No. 22-cv-1671<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Christina Beauregard ("Plaintiff Beauregard"), Jane Braaten ("Plaintiff Braaten"), Jessica Cray ("Plaintiff Cray"), Melanie Hoover ("Plaintiff Hoover"), Jennifer Thornwall ("Plaintiff Thornwall"), Jason Zweifel ("Plaintiff Zweifel"), Melanie White ("Plaintiff White"), and Ann Tescher ("Plaintiff Tescher"), (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendants The Mayo Clinic ("Defendant Mayo"), the Mayo Foundation for Medical Education & Research ("Defendant Mayo Foundation"); Mayo Clinic Health System-Southeast Minnesota Region, a Minnesota non-profit corporation ("Defendant Mayo Southeast"), and Mayo Clinic Health System-Southwest, a Minnesota non-profit corporation ("Defendant Mayo Southwest") (all Defendants collectively "Defendants").

## INTRODUCTION

1.      In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporations Defendant Mayo Foundation, Defendant Mayo Southeast and Defendant Mayo Southwest, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendants' employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with their respective employer Defendants to be exempt from taking the Covid-19 vaccination.  Defendants denied the requested religious exemptions.  In addition, Defendants failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendants terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendants reversed part of their Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.      Based on Defendants' implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.      This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.      This Court has personal jurisdiction over Defendant Mayo Foundation as it is a non-profit corporation operating in and located in the State of Minnesota.

7.      This Court has personal jurisdiction over Defendant Mayo Southeast as it is a non-profit corporation operating in and located in the State of Minnesota.

8.      This Court has personal jurisdiction over Defendant Mayo Southwest as it is a non-profit corporation operating in and located in the State of Minnesota.

9.      Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Defendant Mayo Foundation is subject to the provisions of Title VII and the ADA because Defendant Mayo Foundation employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

11.     Defendant Mayo Southeast is subject to the provisions of Title VII and the ADA because Defendant Mayo Southeast employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

12.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

## PARTIES

13.     Plaintiff Beauregard is a Stearns County, Minnesota resident who worked for Defendant Mayo as a paramedic.

14.     Plaintiff Braaten is a Waseca County, Minnesota resident who worked for Defendant Mayo Southeast as an LPN.  Plaintiff Braaten worked for Defendant Mayo Southeast for nearly 17 years.

15.     Plaintiff Cray is an Olmsted County, Minnesota resident who worked for Defendant Mayo Foundation as a performance improvement advisor.  She worked for Defendant Mayo Foundation for about 13 years.

16.     Plaintiff Hoover is a Goodhue County, Minnesota resident who worked for Defendant Mayo Southeast as a radiologic technologist.  Plaintiff Hoover worked for Defendant Mayo for 26 years.

17.     Plaintiff Thornwall is an Olmsted County, Minnesota resident who worked for Defendant Mayo as a neurosurgical specialist.  Plaintiff Thornwall worked for Defendant Mayo for 14 years.

18.     Plaintiff Zweifel is a Dodge County, Minnesota resident who worked for Mayo as a registered nurse.  Plaintiff Zweifel worked for Defendant Mayo for 26 years.

19.     Plaintiff White is a Fillmore County, Minnesota resident who worked for Mayo as a desk operations specialist.  She worked for Defendant Mayo for nearly 19 years.

20.     Plaintiff Tescher is a Goodhue County, Minnesota resident who worked for Defendant Mayo as a clinical nurse specialist in the intensive care unit.  She worked for Defendant Mayo for over 30 years.

21.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

22.     Defendant Mayo Foundation is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

23.     Defendant Mayo Southeast is a Minnesota non-profit corporation which operates medical facilities in Minnesota.

## FACTS

24.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

25.     Defendants recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.  On September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

26.     However, just two weeks later, Defendants implemented their Vaccine Mandate for Defendants' employees.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

27.     Defendants announced their Vaccine Mandate on October 13, 2021. Defendants' Vaccine Mandate required all staff to become vaccinated against Covid-19, and that if such staff were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

28.     On October 25, 2021, Defendants sent a communication to their employees outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on December 3, 2021, Defendants issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

29.     Defendants announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

30.     However, what Defendants gave with one hand, they took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff will have a qualifying religious exemption</u>.*"  (emphasis added)  Defendants further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>,* (emphasis added). Further, Defendants declared: *"[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>.*" (emphasis added).

31.     Defendants thus put themselves in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

32.     Defendants also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted or disregarded.

33.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendants wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

34.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Beauregard requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Beauregard also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Beauregard's request for reconsideration.  Defendant Mayo did not provide Plaintiff Beauregard with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Beauregard's request for a religious exemption.

35.     Plaintiff Beauregard is a Christian who believes, based on her study of Scripture and prayer, that her body is a Temple of the Holy Spirit.  She is not to alter her body or put substances into it that defile her body.  Plaintiff Beauregard also believes in

8

the sanctity of human life. Since the vaccines were produced with or tested with cells from aborted human babies, she believes that if she received the vaccine she would be complicit in killing human babies, in violation of the Commandment Thou Shall Not Kill. Plaintiff Beauregard has determined she cannot, consistent with her religious beliefs, take the Covid-19 vaccine.

36.     Plaintiff Beauregard was within a few weeks of becoming vesting in her pension when she was terminated for not taking the vaccine.

37.     Prior to her termination, Plaintiff Beauregard had received excellent job performance reviews.

38.     Plaintiff Beauregard contracted Covid-19 and recovered, which has provided her with natural immunity.

39.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Braaten requested a religious exemption from Defendant Mayo Southeast, which Defendant Mayo Southeast denied.  Plaintiff Braaten also submitted a request for reconsideration from Defendant Mayo Southeast of its denial of the request for Plaintiff Braaten's religious exemption. Defendant Mayo Southeast denied Plaintiff Braaten's request for reconsideration. Defendant Mayo Southeast did not provide Plaintiff Braaten with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Southeast provide specific information regarding the reasons for the denial of Plaintiff Braaten's request for reconsideration.

40.     Plaintiff Braaten is a Christian and believes that taking the Covid-19 vaccine would violate her religious beliefs.  Plaintiff Braaten is a believer in Jesus Christ, Lord and Savior, believes the tenants of Holy Scripture that her body is a Temple of the Holy Spirit and that to put the vaccine into her body, which is made in the image and likeness of God and has its own immunity system, would be a sin.

41.     Plaintiff Braaten received positive job performance reviews including a Service Excellence Award and that she was a: "Great nurse and fun to work with," and "extremely dedicated to her team and incredibly hard working."

42.     Plaintiff Braaten was 58 years old at the time of her termination and had worked for Mayo Southeast for over 16 years.

43.     Consistent with Defendant Mayo Foundation's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Cray requested a religious exemption from Defendant Mayo's Vaccine Mandate, which Defendant Mayo Foundation denied.  Plaintiff Cray also submitted a request for reconsideration.  Defendant Mayo Foundation denied Plaintiff Cray's request for reconsideration.  Defendant Mayo did not provide Plaintiff Cray with the criteria it used in evaluating her request for a religious exemption from the Vaccine Mandate, nor did Defendant Mayo Foundation provide specific information regarding the reasons for the denial of Plaintiff Cray's request for a religious exemption.

44.     Plaintiff Cray is a Christian who believes based upon her interpretation of Christian Scripture that she cannot take the Covid-19 vaccine.  Plaintiff Cray is a believer in Jesus Christ, Lord and Savior, and believes the tenants of Holy Scripture that whatever

10

she does in life will be called into account, including what she does to her body.  Plaintiff

Cray believes her body is made in the image and likeness of God, and to take the Covid-

19 vaccine would be a sin.  Additionally, Plaintiff Cray cannot, consistent with her

conscience or religious beliefs, receive the Covid-19 vaccine, because the vaccines were

produced with or tested with cells from aborted human babies.

45.     Plaintiff Cray received positive job performance reviews from Defendant

Mayo Foundation, including that she "excels at contributing value to patient care quality

and safety improvement," and "is a true asset to Mayo Clinic."

46.     Plaintiff Cray contracted Covid-19 and recovered, which provided her with

natural immunity.

47.     Plaintiff Cray knows of younger co-workers whose religious exemptions

were granted.

48.     Plaintiff Cray knows of several patients who had serious events or death

within a short time after receiving the Covid-19 vaccine, which Mayo failed to report.

49.     Consistent with Defendants' instructions that employees could request a

religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Hoover requested a

religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff

Hoover also submitted a request for reconsideration from Defendant Mayo of its denial of

the request for a religious exemption.  Defendant Mayo denied Plaintiff Hoover's request

for reconsideration.  Defendant Mayo did not provide Plaintiff Hoover with the criteria it

used in evaluating his request for a religious exemption nor did Defendant Mayo provide

specific information regarding the reasons for the denial of Plaintiff Hoover's request for a religious exemption.

50.     As an unvaccinated employee, plaintiff Hoover was requested to sign a release of information which allowed Mayo to review her records and reasons she was not doing weekly testing.

51.     Plaintiff Hoover is a Christian who believes, based on her interpretation of Scripture, that her body is a Temple of the Holy Spirit and must not be tampered with. It would violate her conscience to take the vaccine.

52.     Plaintiff Hoover received positive job performance reviews from Defendant Mayo, including that she "achieves expectations," and "Melanie has been a joy to work with," and is "dependable and cheerful."

53.     Plaintiff Hoover contracted Covid-19 and recovered, thereby providing her with natural immunity.  Because she tested positive late in 2021, she received a temporary medical exemption which required her to be masked and undergo regular testing.

54.     Though Plaintiff Hoover's religious exemption was denied and she was terminated at age 53, younger co-workers' religious exemptions were granted.

55.     Plaintiff Hoover is familiar with patients and others who have received the vaccine and then become ill, including a young, male patient who developed cardiomyopathy, a work friend who developed tinnitus, a friend who was vaccinated and shortly thereafter had menstrual bleeding for eight months.

56.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Thornwall requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Thornwall also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Thornwall's attempt to request reconsideration of the denial.  Defendant Mayo did not provide Plaintiff Thornwall with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Thornwall's request for a religious exemption.

57.     Plaintiff Thornwall is a Roman Catholic Christian who believes each person has the right to freely decide what to put into his or her body.  Each human is made in the image and likeness of God, with a conscience, and that mandating the Covid-19 vaccination violates her personhood.  Further, Plaintiff Thornwall objects to participating in the practice of killing human babies and, because the Covid-19 vaccines are produced with or tested with the cells of aborted human babies, Plaintiff Thornwall believes that taking the Covid-19 vaccine would make her a participant in the practice of killing human babies.  Thus, for Plaintiff Thornwall to receive the Covid-19 vaccine would violate Plaintiff Thornwall's religious beliefs.

58.     Plaintiff Thornwall received positive job performance reviews from Defendant Mayo, including that she "is a very smart, very competent, meticulous and an excellent problem solver," and "a valued member of our team."

59.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Zweifel requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Zweifel also attempted to submit a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Zweifel's attempts to request reconsideration.  Defendant Mayo did not provide Plaintiff Zweifel with the criteria it used in evaluating his request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Zweifel's request for a religious exemption.

60.     Plaintiff Zweifel is a Christian who believes, based on his interpretation of Scripture, that his body is a Temple of the Holy Spirit and it would violate his conscience to take the vaccine.  Plaintiff Zweifel believes it is his responsibility to take care of his body and make responsible decisions about what to put into his body. Plaintiff Zweifel also believes that it would be sinful to take the vaccines, since they were produced with or tested with aborted human baby cells, and that to take the vaccine would make him complicit in killing the unborn babies from whom the cells were taken.

61.     During his 26 years of employment with Defendant Mayo, Plaintiff Zweifel received positive job performance reviews.

62.     Plaintiff Zweifel believes he was terminated because of his age and high rate of pay due to his seniority with Mayo.

63.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff White requested a

religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff

White also submitted a request for reconsideration from Defendant Mayo of its denial of

the request for a religious exemption.  Defendant Mayo denied Plaintiff White's request

for reconsideration.  Defendant Mayo did not provide Plaintiff White with the criteria it

used in evaluating her request for a religious exemption nor did Defendant Mayo provide

specific information regarding the reasons for the denial of Plaintiff White's request for a

religious exemption.

64.     Plaintiff White is a Christian who believes that her body is a Temple of

God and has an immunity system.  Through prayer God has revealed to Plaintiff White

that she is not to change her body or put into it substances which change or violate what

God has made. Plaintiff White believes it is wrong to put cells from aborted unborn

human babies into her body. Since the vaccines were produced with or tested with cells

from aborted human babies, it would violate Plaintiff White's religious beliefs to take the

vaccine.

65.     Plaintiff White contracted Covid-19 and recovered, which provided her

with natural immunity. Plaintiff White had informed Defendant Mayo of her natural

immunity prior to Defendant Mayo terminating Plaintiff White's employment.

66.     During her 19 years of employment with Defendant, Plaintiff White

received positive job performance reviews from Defendant Mayo.

67.     Consistent with Defendants' instructions that employees could request a

religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Tescher requested a

religious exemption from Defendant Mayo, which Defendant Mayo granted but required

weekly testing.  Plaintiff Tescher also submitted a request for an exemption from the testing, and Defendant Mayo denied that request for a religious exemption.  Defendant Mayo denied Plaintiff Tescher's request for reconsideration.  Defendant Mayo did not provide Plaintiff Tescher with the criteria it used in evaluating her request for a religious exemption from testing, nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Tescher's request for a religious exemption from testing.

68.     Plaintiff Tescher contracted Covid-19 and recovered which provided her with natural immunity.

69.     Plaintiff Tescher has been treated discriminatorily in that Defendant Mayo treats its vaccinated and unvaccinated employees differently. Defendant Mayo required unvaccinated employees to undergo testing while vaccinated employees did not, and Defendant Mayo excludes unvaccinated employees such as Plaintiff Tescher from certain meetings and work functions.

70.     Plaintiff Tescher is familiar with people who have become sick shortly after receiving the vaccine.

71.     After Defendants had told Plaintiffs that Defendants had denied their requests for religious exemptions and requests for reconsideration, Defendants also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification.*"

72.     Defendant Mayo terminated Plaintiff Beauregard on January 3, 2022. Plaintiff Dahl filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Dahl a Right to Sue letter dated March 28, 2022.

73.     Defendant Mayo Southeast terminated Plaintiff Braaten on January 3, 2022. Plaintiff Braaten filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Braaten a Right to Sue letter dated March 28, 2022.

74.     Defendant Mayo terminated Plaintiff Cray on January 3, 2022.  Plaintiff Cray filed charges of discrimination with the EEOC, and the EEOC issued Plaintiff Cray a Right to Sue letter dated March 28, 2022.

75.     Defendant Mayo Southeast terminated Plaintiff Hoover on February 18, 2022.  Plaintiff Hoover filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Hoover a Right to Sue letter dated March 28, 2022.

76.     Defendant Mayo terminated Plaintiff Thornwall on January 3, 2022. Plaintiff Thornwall filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Thornwall a Right to Sue letter dated March 28, 2022.

77.     Defendant Mayo terminated Plaintiff Zweifel on January 3, 2022.  Plaintiff Zweifel filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Zweifel a Right to Sue letter dated March 28, 2022.

78.     Defendant Mayo terminated Plaintiff White on January 3, 2022.  Plaintiff White filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff White a Right to Sue letter dated March 28, 2022.

79.     Plaintiff Tescher filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Tescher a Right to Sue letter dated March 29, 2022.

80.     Defendants created an ad hoc panel to review exemption requests for taking the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an exemption, but Defendants denied nearly every request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

81.     As a result of Defendants' policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendants terminated as a result.

82.     In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendants sent such employees, including Plaintiffs, the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

83.     Defendants conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendants' processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-

19 vaccine, Defendants wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation, Defendants sent its employees more boilerplate language to justify its pre-determined result:

> "*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine*."

84.    Defendants actually specifically disavowed an individual interactive process for evaluating requests for a religious exemption to taking the Covid-19 vaccine writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

85.    Plaintiffs sought further clarification of Defendants' criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendants determining that each of the Plaintiffs did not have a "sincerely held religious belief."  However, Defendants refused to respond to these individual requests for clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendants' letters.

86.    In their form denial letters, Defendants announced that they would accept appeals of their uniform denial decisions. "*If you would like to submit additional*

*clarifying information, you may submit a reconsideration request here*." Each of the

Plaintiffs took advantage of that process and submitted additional information to

Defendants.

87.     Following each of the Plaintiffs' requests for reconsideration of their

requests for a religious exemption to taking the Covid-19 vaccine, Defendants again

issued identical denial letters to each of the Plaintiffs and nearly every employee who

appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine.

Defendants' transmittal email messages stated: "*Unfortunately, the additional*

*information you provided did not change the outcome as it did not meet the criteria for a*

*religious accommodation*." Again, Defendants engaged in no interactive process to

evaluate the requests for religious exemptions.

88.     Defendants did not provide information to its employees, including each of

the Plaintiffs, about how Defendants determined whether the religious beliefs of those

employees who submitted requests for a religious exemption to taking the Covid-19

vaccine were sincerely held or whether those religious beliefs would be accommodated.

89.     Defendants' original denial of each of the Plaintiffs' requests for a religious

exemption and Defendants' denial of each of the Plaintiffs' requests for reconsideration

of the denial of their requests for a religious exemption to taking the Covid-19 vaccine

contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy*

*the content of this notification*."

90.     Defendants further instructed its employees to *"endorse the vaccine or say*

*nothing."*

91.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendants made no effort to accommodate their requests for a religious exemption. Further, Defendants never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

92.     Defendants, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

93.     Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

94.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

21

95.     The numbers of patients hospitalized because of Covid-19 positive status

has also been overstated because many were hospitalized for other causes, not because of

Covid-19.

96.     Thus, the extent of Covid-19 infections, the severity of the Covid-19

infection, the efficacy of the vaccines, and the time-length of vaccine protection may all

have been overstated, contributing to an over exuberance in mandating vaccines, and

punishing the unvaccinated, as Defendants have done as set forth above.

97.     Early on in the Covid-19 pandemic, and before any vaccines were

available, Defendants provided free testing to determine "*how many Mayo Clinic staff

have developed antibodies against SARS-Co-V-2*."

98.     Rather than disclosing the results of its determination on the numbers of

Defendants' "staff" that "have developed antibodies against SARS-Co-V-2," or

disclosing studies on the "duration of immunity after Covid-19," (which some studies

have asserted are many times more effective than vaccine immunity), Defendants have

not made public this information and instead simply issued its Vaccine Mandate.

99.     On March 8, 2022, Defendants announced it would suspend the testing

program portion of its Vaccine Mandate.  As a result, Defendants' remaining

unvaccinated employees are now treated similarly to vaccinated employees.

100.     After terminating each of the Plaintiffs, Defendants suspended weekly

testing effective March 14, 2022.  This means that employees who would have had their

religious exemptions granted, contingent on weekly testing, and were terminated between

January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no

longer be terminated for objecting to testing, which Defendants have now determined was unnecessary.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

101.    Plaintiffs restate and reallege paragraphs 1 through 100 as if fully set-forth herein.

102.    Each Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

103.    Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

104.    Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

105.    Each Plaintiff informed his or her respective employer Defendant of the conflict between their religious beliefs and taking the Vaccine Mandate.

106.    Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

107.    The Act prohibits Defendants from scrutinizing what the Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of

their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

108.    Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

109.    In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendants and their ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

110.    Despite the Plaintiffs' consistent requests for Defendants to engage in an interactive process regarding their requests for accommodation, Defendants refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other of the Defendants' employees using an identical form letter.

111.    As set forth above, Defendants could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them continue to do their job the same as they had done for the last one and one-half years of their employment.

24

112.     Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

113.     Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA §363A.08

114.     Plaintiffs restate and reallege paragraphs 1 through 113 as if fully set-forth herein.

115.     Minn. Stat. §363A.01, et seq. prohibits discrimination in employment based on religion.

116.     Defendants are "employers" within the meaning of Minn. Stat. §363A.01.

117.     Plaintiffs are "employees" within the meaning of Minn. Stat. §363A.01.

118.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

119.     Plaintiffs informed their respective Defendant employers of the conflict between their religious beliefs and the Vaccine Mandate.

120.     Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

25

121.    Minn. Stat. §363A.01 et seq. prohibits Defendants from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

122.    In response to the Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, Defendants' *ad hoc* panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

123.    Despite Plaintiffs' requests for their respective Defendant employer to engage in dialogue regarding their respective requests for a religious exemption, each of the respective Defendants refused throughout to engage in the interactive process, and instead Plaintiffs' employer Defendant terminated each of these Plaintiffs for generalized reasons, using identical form letters.

124.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. §363A.01 et seq.

125.    Because of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under
### the ADA, 42 U.S.C. § 12101 *et seq.*

126.    Plaintiffs restate and reallege paragraphs 1 through 125 as if fully set-forth herein.

127.    Each Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5)(A).

128.    Each of the Plaintiffs was an "employee" of their respective Defendant employer within the meaning of 42 U.S.C. §12111(4).

129.    The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

130.    Defendants' Vaccine Mandate violated 42 U.S.C. §12112 (d)(4)(a).

131.    As a result of Defendants' actions in violation of the ADA, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute

132.    Plaintiffs restate and reallege paragraphs 1 through 131 as if fully set-forth herein.

133.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id.* §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …". *Minn. Stat. §12.39, Subd. 1* (emphasis added).

> Further, "before performing … vaccination of an individual … a *health care provider* shall *notify the individual* of the *right to refuse* the … vaccination, …." *Minn. Stat. §12.39, Subd. 2 (*emphasis added*).

134.    Plaintiffs are "individuals" who have a "fundamental right" to "refuse medical treatment" and "vaccinations."

135.    Each Defendant is a "health care provider" (*Minn. Stat. §12.39, Subd. 2*), who is obligated to "notify the individual of the right to refuse vaccinations."  Further, the underlying policy applies to "private agencies of every type" (*Minn. Stat. §12.02, Subd. 2*).

136.    The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

137.    Plaintiffs have objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiffs' refusal to accede to Defendants'

Vaccine Mandate, Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

138.    Defendants' actions in punishing the Plaintiffs for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendants admitted in 2021 that Covid-19 vaccinations could not be mandatory and must instead be voluntary.

139.    Defendants partially changed their policy in October, 2021. Subsequently, in March, 2022, Defendants changed their Vaccine Mandate again to no longer require weekly testing for unvaccinated employees.

140.    As a result of Defendants' illegal actions taken against Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

141.    Plaintiffs restate and reallege paragraphs 1 through 140 above as if fully set-forth herein.

142.    Defendants had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

143.    Defendants wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age,*

national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

144.   Defendants' policies and statements created a contract between it and its employees.

145.   Each of the Defendants' actions in terminating the respective Plaintiff who worked for one of the Defendants, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

146.   Plaintiffs have been damaged by Defendants' breach of contract.

147.   In the alternative, Defendants' promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendants' promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendants for an Order of the Court as follows:

1.   Adjudging that Defendants are liable to each of their respective employee Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and

suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.      Enjoining Defendants from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering each Defendant to take action to restore each of their respective employee Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3.      Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not have a scientific basis.

Dated: June 27, 2022                    *s/Gregory M. Erickson*
                                        Gregory M. Erickson, 276522
                                        Vincent J. Fahnlander, 19220X
                                        Mohrman, Kaardal & Erickson, P.A.
                                        150 South Fifth Street, Suite 3100
                                        Minneapolis, Minnesota 55402
                                        Telephone: 612-341-1074
                                        Email: erickson@mklaw.com
                                        Email: fahnlander@mklaw.com
                                        *Attorneys for Plaintiffs*